UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARKUS HUNTER,

    Plaintiff,

v.

GEORGE C. WELBORN, *et al.,*

    Defendants.

Case No. 02-cv-104-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on several matters: plaintiff Marcus Hunter's ("Hunter") objections to a February 27, 2007, order and a September 25, 2007, order by Magistrate Judge Clifford J. Proud (Docs. 139 & 147) and an October 9, 2007, Report and Recommendation by Magistrate Judge Proud (Doc. 146).

**I.    Objection (Doc. 139) to February 27, 2007, Order (Doc. 134);
Objection (Doc. 147) to September 25, 2007, Order (Doc. 143)**

A district court reviewing a magistrate judge's decision on nondispositive issues should only modify or set aside that decision if it is clearly erroneous or contrary to law. See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Accordingly, the Court will affirm Magistrate Judge Proud's decision unless his factual findings are clearly erroneous or his legal conclusions are contrary to law. *Id.*

On October 17, 2006, Hunter asked the Court to extend the time in which he could respond to the defendants'[1] summary judgment motion (Doc. 121), which had been filed on September 29, 2006 (Doc. 128). On October 23, 2006, Hunter asked the Court to stay its

---

[1]Defendants Johnston, Jordan and Harner did not join in the summary judgment motion. Nevertheless, for simplicity's sake, the Court will refer to the motion as having been filed by "the defendants," with the understanding that that designation does not include those defendants.

consideration of the defendants' summary judgment motion on the grounds that he was unable to communicate with certain necessary prisoner witnesses, that defendants Hinsley and Harner had not responded to interrogatories and that objections to certain of Magistrate Judge Proud's discovery rulings were pending before the Court (Doc. 129). On November 22, 2006, before the Court ruled on his pending motions, Hunter filed a response to the summary judgment motion (Docs. 130 & 131). On February 27, 2007, Magistrate Judge Proud denied Hunter's motions as moot in light of the fact that Hunter had responded to the summary judgment motion and the Court had resolved Hunter's objections to the discovery rulings at issue (Doc. 134). On April 2, 2007, Hunter objected to that order (Doc. 139).

On April 9, 2007, Hunter again asked the Court to stay its consideration of the defendant's motion for summary judgment until he received responses to interrogatories directed at defendants Hinsley and Harner and until the Court ruled on his objection described in the prior paragraph of this order (Doc. 140). In response to Hunter's motion, the defendants responded that Hinsley and Harner had responded in August 2006 to the interrogatories directed to them and attached a copy of those responses to their filing (Doc. 142). On September 26, 2007, Magistrate Judge Proud denied Hunter's motion, finding that Hinsley and Harner had responded to the interrogatories directed to them and that the Court had ruled it would not stay consideration of the summary judgment motion pending the appeal of Magistrate Judge Proud's February 27, 2007, order (Doc. 143). On October 15, 2007, Hunter objected to that order and moved to compel Hinsley and Harner to respond to outstanding interrogatories (Doc. 147). The defendants have responded (Doc. 148).

The Court has reviewed the relevant documents from the file and has determined that Magistrate Judge Proud's February 27, 2007, and October 15, 2007, orders were not clearly

erroneous or contrary to law. Hinsley and Harner have responded to interrogatories directed at them, Hunter was able to file a response to the summary judgment motion, and the motion is ready to rule upon. For these reasons, the Court will affirm Magistrate Judge Proud's orders (Docs. 134 & 143) and will deny Hunter's motion to compel responses to interrogatories (Doc. 147).

## II. Report and Recommendation (Doc. 146)

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 146) of Magistrate Judge Proud recommending that the Court grant in part and deny in part the defendants' motion for summary judgment (Doc. 121). Hunter has objected to the Report (Doc. 153) and the defendants have responded to his objection (Doc. 154).

After reviewing a magistrate judge's report and recommendation, the Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in the report. Fed. R. Civ. P. 72(b). The Court must review *de novo* the portions of the report to which objections are made. The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Hunter, an inmate at Tamms Correctional Center, alleges in this case that he has been the subject of retaliation for filing numerous grievances. The Report finds that there is no evidence from which a reasonable jury could concluded that defendants Bonifield, Ellis, Nix, Ramsey, Taylor and Welborn were personally involved in any of the alleged retaliatory acts and therefore recommends that summary judgment should be granted in their favor. The Report notes that

3

there is evidence those defendants had knowledge of Hunter's protected speech but that there is no evidence they knew of unconstitutional retaliation such that their silence or inaction could be viewed as condoning or turning a blind eye to it.

The Report further finds that there are genuine issues of material fact about the personal involvement of defendants Elder, Goodman and Hinsley in the alleged retaliation cited by Hunter and recommends accordingly that they should be denied summary judgment.

No party objects to the recommendation to deny summary judgment as to defendants Elder, Goodman and Hinsley. The Court finds that the Report is not clearly erroneous as to that recommendation and will therefore adopt it.

Hunter objects to the recommendation to grant summary judgment as to defendants Bonifield, Ramsey, Taylor, Nix, Ellis and Welborn. Specifically, he asserts that those defendants had personal knowledge of his grievances and were personally involved in the alleged retaliation for those grievances either directly or by condoning it or turning a blind eye to it. The Court will review the Report *de novo* as to that recommendation.

The Court has reviewed the entire file, paying special attention to the documents cited by Hunter in his objection to the Report, and draws the following conclusions.

Bonifield: Hunter alleges that Bonifield enforced a prison policy and practice of losing his personal property, including legal materials, in retaliation for his grievances. The evidence, viewed in Hunter's favor, shows that Bonifield mistreated Hunter and was aware of the acts of her subordinate employees in the law library and refused to stop them. However, the evidence would not lead a reasonable jury to find Bonifield was personally involved in retaliation against Hunter.

As for Bonifield's direct participation in unconstitutional activity, there is no inference

4

from which a reasonable jury could find that retaliation played any part in motivating her actions towards Hunter. The statements in evidence are bare, unsupported allegations that Bonifield's conduct was retaliatory. The only evidence that could possibly support an inference of retaliation is the fact that the misconduct occurred after Hunter had filed grievances and lawsuits mentioning Bonifield and the library staff, but a plaintiff must show more than timing alone to withstand summary judgment on a retaliation claim. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007); *Pugh v. City of Attica*, 259 F.3d 619, 630 (7th Cir. 2001). No reasonable jury could find Bonifield directly retaliated against Hunter.

As for Bonifield's turning a blind eye to the retaliatory acts of her subordinates, there is no evidence from which a jury could find Bonifield was aware that her subordinates' misconduct had a retaliatory motivation and was therefore unconstitutional, even if she knew of the misconduct itself. Timing and Hunter's unsupported accusations of retaliation are not enough to hold Bonifield accountable under § 1983 for her subordinates' acts.

In sum, the evidence might lead a reasonable jury to believe Hunter was treated poorly but could not lead a reasonable jury to believe Bonifield retaliated or turned a blind eye to her subordinate's alleged retaliation.

Ramsey: Hunter alleges Ramsey, a correctional counselor, was aware of the improper conduct of others with respect to the return of his personal property in late 2000 and early 2001 and did not try to stop it. He also alleges Ramsey undermined the grievance procedure and tried to cover up staff misconduct.

The evidence, viewed in Hunter's favor, shows that Hunter made a number of complaints to Ramsey, both informal oral or written requests and formal grievances, complaining that defendant Johnston, Tamms's personal property officer, had not returned his property to him

5

when he returned from being on a writ to another facility. He asserts that Johnston withheld his property in retaliation for prior grievances Hunter had filed against Johnston. Again, the complaints to Ramsey contain unsupported allegations of retaliatory motive on the part of Johnston. Ramsey responded on some but not each occasion Hunter complained to her. After talking with Johnston, Warden Hinsley and others, Ramsey learned that Johnston said he had not returned Hunter's property either because on some occasions Hunter had been disruptive during his attempts to return it so he stopped trying or because on other occasions Hunter had refused to sign the receipt verifying that allowed property had been returned, which under prison regulations prevented the return of that property. Apparently, Hunter objected to the withholding of contraband or excess property, that is, property in excess of that prison regulations allowed him to keep in his cell. Ramsey told Hunter he would not get any of his property back until he signed the receipt for the allowed property. She was present when his allowed property was returned to him and witnessed Hunter sign the property receipt.

The evidence also shows that Hunter complained orally to Ramsey about some issues he had with the library. Ramsey attempted to resolve those issues.

There is simply no evidence from which a reasonable jury could find that Ramsey did anything herself to Hunter in retaliation for his earlier grievances or lawsuits. She was responsive to his complaints and sought to explain to him her assessment of the matters in issue. In addition, there is also nothing from which a reasonable jury could conclude that Ramsey was aware that anything Johnston or the library staff did was the product of a retaliatory motive. As with Bonifield's case, Hunter's unsupported allegations of retaliation and the fact that the alleged misconduct of Johnston and the library staff followed grievances and lawsuits are not enough to create a genuine issue of material fact about whether Ramsey was aware of and

6

condoned or turned a blind eye to unconstitutional conduct.

<u>Taylor:</u> In the complaint, Hunter alleges Taylor, a correctional counselor, told Hunter's sister she could not visit Hunter because she was not on Hunter's visitor list. He also alleges Taylor undermined the grievance procedure and tried to cover up staff misconduct.

The evidence, viewed in Hunter's favor, shows that Hunter made numerous informal oral requests and filed numerous grievances with Taylor. Some were regarding Johnston's taking of some of his personal property in late April 2001 and contained bald assertions that Johnston was retaliating but provided no facts to support that conclusion. Taylor looked into the matter and directed that personal property Johnston improperly retained was offered back to Hunter. He did not, however, seek to have property returned to Hunter where Johnston had given a facially legitimate reason for its retention. Hunter also sent Taylor numerous grievances complaining of other personal property issues, including the confiscation and destruction of property deemed by Johnston to be excess property. At one time, Taylor was unable to locate copies of attachments to certain grievances Hunter had filed.

Hunter also complained to Taylor about the services the library provided him such as notary service, copy service and material delivery, again making unsupported allegations of retaliation. Taylor investigated each grievance, and on each occasion library staff denied any retaliation and provided a facially legitimate reason why services were not provided as Hunter wished.

Hunter also complained to Taylor regarding his mail not being forwarded to him when he was temporarily housed in another institution on a writ, again making unsupported allegations of retaliation. Taylor investigated the issue, and defendant Nix, the mailroom supervisor, responded that there was no record of mail to Hunter being returned to the sender.

Hunter filed a grievance against Taylor in which he complained that on or around November 10, 2001, Taylor told him he was going to kill him for filing a grievance. Taylor responded to this grievance by stating that Hunter's allegations were not true and that he, in fact, said Hunter's name and nothing else.

The evidence regarding the November 10, 2001, incident provides a sufficient basis for a jury to find Taylor retaliated against Hunter for filing a grievance by threatening to kill him. Thus, Hunter's claim of retaliation by Taylor in this instance must survive summary judgment.

However, other than that one instance, there is no evidence from which a reasonable jury could find Taylor was motivated in any way by a retaliatory motive in any of his direct acts or was aware of the retaliation of others and condoned or turned a blind eye to it. He was certainly aware that Hunter was not satisfied with others' treatment of him, but there is nothing from which he could have or should have drawn the inference that their treatment of Hunter was retaliatory. Therefore, all of Hunter's other claims against Taylor are subject to summary judgment in Taylor's favor.

<u>Nix:</u> In his complaint, Hunter alleges Nix, the mailroom supervisor, retaliated against him by impeding the delivery of his mail to him while he was temporarily housed in another institution on a writ.

The evidence, viewed in Hunter's favor, shows that Hunter had complained of mailroom services in early 1999. In August 1999, after Hunter had temporarily left Tamms on a writ, he wrote a letter to Nix asking her to forward his mail to his temporary location at the Cook County Jail. When Tamms receives mail for Hunter while he was gone, Nix did not forward it but instead returned it to the sender. In 2001, Nix reported that Hunter had not received any mail while he was away from Tamms. She then explained that her statement had been based on a

search of the mail logs since 2000 and did not include mail sent to Hunter in 1999, when he had been sent a substantial number of mail items that were returned to the sender.

While the evidence could lead a reasonable jury to find that Nix did not perform her mailroom duties properly, there is simply no evidence that could lead a reasonable jury to find that her shortcomings were in any way causally connected to Hunter's prior complaints against the mailroom staff, that is, that she was motivated by retaliation. As noted previously, timing and unsupported allegations of retaliation are not enough to withstand summary judgment.

<u>Ellis:</u>  Hunter alleges Ellis, a grievance officer, denied his grievances and told him not to write any more. He also alleges Ellis undermined the grievance procedure and tried to cover up staff misconduct.

The evidence, viewed in Hunter's favor, shows that Ellis was the hearing officer who considered many of the grievances filed by Hunter discussed above. Ellis recommended that the warden deny the grievances, some because they were duplicates of prior grievances that had already been disposed of and others because the staff response to the grievance denied the conduct or provided a legitimate reason for the staff conduct.

The evidence also shows that Ellis received Hunter's request for an address book but Ellis could not find it in Hunter's stored property and that at one time Ellis was unable to locate copies of attachments to certain grievances Hunter had filed.

There is no evidence from which a reasonable jury could find that Ellis acted with a retaliatory motive. As noted above, timing and unsupported allegations of retaliation are not enough to withstand summary judgment. In addition, no reasonable jury could find Ellis was aware of any unconstitutional retaliation by other employees that he condoned or to which he turned a blind eye.

Welborn: Hunter alleges Welborn, the warden of Tamms at the relevant times, enforced a prison policy and practice of losing his personal property, including legal materials, in retaliation for his grievances. The evidence, viewed in Hunter's favor, shows that Welborn denied Hunter's grievances that were appealed to his level.

Again, for the same reasons the Court will grant summary judgment for Ellis, the Court will also grant summary judgment for Welborn. Although it is clear that Welborn may have been aware of misconduct or deficiencies of his subordinates, there is no evidence Welborn acted with a retaliatory intent when he denied Hunter's grievances. Furthermore, even knowing of his subordinates' conduct, Welborn had no information from which he could have been aware that any of that conduct was motivated by retaliation such that he could have condoned it or turned a blind eye to it. The most he knew was that Hunter had filed a number of grievances against prison staff and that staff continued to disappoint Hunter in the performance of their duties. This is not enough to show that Welborn knew of and disregarded retaliatory conduct.

For these reasons, the Court will adopt in part and reject in part the Report (Doc. 146). The Report will be rejected to the extent it recommends granting summary judgment for Taylor on the basis of the allegedly retaliatory events that occurred on or around November 10, 2001. The Report will be adopted to the extent it recommends granting summary judgment on the other claims at issue in the motion.

### III. Conclusion

For the foregoing reasons, the Court:

- **OVERRULES** Hunter's objections (Docs. 139 & 147);

- **AFFIRMS** Magistrate Judge Proud's orders of February 27, 2007 (Doc. 134) and September 25, 2007 (Doc. 143);

- **DENIES** Hunter's motion to compel responses to interrogatories (Doc. 147);

- **ADOPTS in part** and **REJECTS in part** the Report (Doc. 146);

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 121). The motion is **DENIED** with respect to defendants Elder, Goodman, Hinsley and Taylor (for the November 10, 2001, incident only). The motion is **GRANTED** with respect to Bonifield, Ellis, Nix, Ramsey, Welborn and Taylor (with respect to all other claims);

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

In light of this order, defendants Elder, Goodman, Hinsley, Johnston, Jordan, Harner and Taylor remain in this case and will proceed to trial.

**IT IS SO ORDERED.**
**DATED:  March 24, 2008**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**